**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **TracBeam, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:14-CV-680** |
| | § | |
| **APPLE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

---

## MEMORANDUM AND ORDER

Before the Court is Defendant Apple, Inc.'s ("Apple") Motion to Transfer (Docket No. 26). For the reasons stated below, Apple's Motion is **DENIED**.

## BACKGROUND

On August 8, 2014, Plaintiff TracBeam, LLC ("TracBeam") filed the above-styled action against Apple alleging its location service for the iOS and Mac OS devices and the applications and services that consume or make use of the location information collected and provided by the Apple location service, including Maps, Siri, Safari, Find My iPhone, Camera, and the iAds network (collectively, "Accused Products") infringe United States Patent Numbers 8,032,153 (" '153 Patent"), 7,764,231 (" '231 Patent"), 7,525,484 (" '484 Patent"), and 7,298,327 (" '327 Patent"). On December 30, 2014, Apple filed its Motion requesting transfer to the Northern District of California. Docket No. 26. TracBeam is a Colorado limited liability company based in Golden, Colorado. Docket No. 36 at 1. Apple is a California corporation headquartered in Cupertino, California. Docket No. 26 at 1.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200.

Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

**DISCUSSION**

As an initial matter, TracBeam makes two arguments that are not limited to individual factors. First, TracBeam argues that the Court should exercise its discretion and disregard the four new declarations and 33 new exhibits in Apple's reply brief. The disparity between the evidence cited in the reply and opening motion is concerning. While this Court allows sur-replies, a movant includes such a large amount of new evidence in its reply brief at its peril. *See In re Apple, Inc.*, 581 F. App'x 886, 891 (Fed. Cir. 2014) (J. Bryson dissenting, citing cases where Courts disregard new evidence or argument offered for the first time in the reply brief). This is especially true in situations like this one—where following a motion to transfer the parties engage in venue-related discovery and the movant includes a significant amount of new evidence that it had access to prior to filing the motion. If a forum is truly inconvenient, the movant should have evidence demonstrating that inconvenience before it files a motion. Nevertheless, the Court does not discount Apple's evidence, though views the evidence in the context in which it was provided.

Second, TracBeam relatedly argues that Apple was deceptive in its original motion (by not mentioning its Austin or New York City employees) and not fully candid in discovery (Apple only identified suppliers in California and excluded suppliers in Eastern District of Texas, Northern District of Texas, and Western District of Texas). Docket No. 47 at 2, 6–8. TracBeam requests that the Court discount Apple's evidence and employees in Northern District of California (private factors 1 and 3), infer relevant third-party witnesses within compulsory

process of the Eastern District of Texas (private factor 2), infer the presence of willing witnesses (private factor 3) and discount local interest in Northern District of California (public factor 1). *Id*. at 2–3, 6–8, 10. TracBeam's request is too extreme as nothing Apple has done rises to the level of requiring an adverse inference as to any factor. The more appropriate remedy is simply to view the supplied evidence as a whole, and consider TracBeam's contention that Apple was overly-selective in submitting its evidence when weighing the factors.

**Threshold – Eligibility for Transfer**

Apple is headquartered in Cupertino, California, within the Northern District of California. Docket No. 26 at 1. TracBeam does not dispute whether or not this case could have originally been brought in the Northern District of California. Thus, the threshold inquiry is satisfied, and the Court turns to the public and private interest factors.

**I. Convenience**

**A. Private Factors**

**i. *Relative Ease of Access to Sources of Proof***

This factor is a relevant part of the transfer analysis despite technological advances that make transporting large volumes of documents across the country more convenient. *In re Volkswagen II*, 545 F.3d at 316. Consequently, courts analyze the distance documents must be transported from their physical location to the trial venue, acting under the assumption that electronically stored documents are, in fact, physical. *See id.* In addition, courts presume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Finally, parties must identify sources of proof with some specificity such that the court may determine whether transfer will increase the convenience of

the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

Apple claims that its "relevant evidence is in or near Cupertino." Docket No. 64 at 11–12. Apple also argues that TracBeam "has no presence" in this district and TracBeam's evidence is located in Colorado, Alabama, or Florida. Docket Nos. 26 at 6, 47 at 6–7.

TracBeam responds that Apple does not show that any relevant evidence is *uniquely* located in the Northern District of California. Docket No. 36 at 4. That is, TracBeam argues that Apple's relevant documents are "located" on Apple's network and are equally as accessible from Apple's Austin facility as from its Cupertino facility. *Id.* Moreover, TracBeam provides evidence that 300 Austin engineers work on the "systems-on-chip" used in the iPhone, which allegedly meets the "computational machinery" limitation in many of the claims. Docket No. 36 at 4, Ex. A (Apple supp. responses 2/18/2015). TracBeam also provides evidence that Apple's North Carolina facility houses data centers that store the WiFi, cell tower, and GSP data used by the accused iOS devices and location services. Docket No. 36 at 4, Ex. A at 19–20. TracBeam also provides evidence that New York City is home to iAd advertisements, which are the geo-targeted mobile ads that form the center of TracBeam's damages case. Docket No. 36 at 5, Ex. B (Buckley 11/15/13 decl., ¶3).

TracBeam claims that its own evidence is located primarily in Golden, Colorado (where TracBeam and co-owner Dr. Dupray are located) and Coconut Creek, Florida (where TracBeam co-owner Warren LeBlanc is located). Docket No. 36 at 6. TracBeam also states that it has documents in the Eastern District of Texas from its two prior lawsuits. Docket No. 47 at 5, n.5. While TracBeam acknowledges that such documents "are typically not credited in the venue

analysis," those documents were kept "in the ordinary course of the prior litigation, not in anticipation of this litigation or with an intent to manipulate venue." *Id*.

Finally, TracBeam provides evidence that third-party documents are located "on balance, in or closer to this District than Northern California." Docket No. 36 at 6–7 (listing documents held by co-inventor Charles Karr in Alabama; former defendants or licensees in Kansas, Dallas, TX, Boston, MA, Quitman, TX, NJ, Georgia, California; Apple suppliers and vendors in Texas (STMicroelectronics, Samsung, and Murata Electronics); and current defendant T-Mobile/MetroPCS in Richardson, TX, Bellevue, WA, and New York City).

In its reply and at the hearing, Apple discounted TracBeam's argument that Apple has relevant evidence in Texas, North Carolina, and New York City. *See, e.g.*, Docket No. 42 at 4–6. Apple states that any evidence in those locations also exists in its Cupertino headquarters. *Id.* In a similar fashion, Apple claims that the suppliers that TracBeam identifies as being located in Texas also have a presence in California. 6:14-cv-680, Docket No. 54 at 26:14–54:2. Apple argues that any relevant information those suppliers have is not unique to their Texas locations, but such evidence is readily available via their presence in the Northern District of California. *Id*. At the hearing, Apple also discounted the importance of the Peoples Wireless evidence and questioned whether any MetroPCS documents still exist in the Eastern District of Texas, in light of T-Mobile's purchase of MetroPCS. 6:14-cv-680, Docket No. 54 at 6:11, 71:6–18. Apple finally argues that once this (and similar) evidence is discounted, the Court cannot consider this District's "central" location to the other sources of evidence that Apple admits are spread throughout the country. Docket Nos. 42 at 5–6, 54 at 30:3–6.

In sum, Apple has shown that its relevant documents are, or can be readily accessed, in the Northern District of California. In doing so, Apple does not genuinely dispute TracBeam's

mirror argument that those documents can be accessed from any of Apple's facilities, including its Austin location. *See* Docket No. 47 at 2. Apple has also shown that while evidence from its suppliers and vendors can be found in or near this district, that evidence is also accessible in the Northern District of California. TracBeam has shown that the Eastern District of Texas holds the MetroPCS documents, the Peoples Wireless documents, and TracBeam's documents that are housed in its counsel's office as a result of its two prior cases, which the Court finds were not moved there in anticipation of this litigation in an attempt to manufacture venue. Therefore, the Court can properly consider the locations of all the sources of proof. *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). Finally, TracBeam has shown there is relevant TracBeam-related evidence in Colorado, Alabama, and Florida.

Considering the nation-wide spread of relevant evidence, the fact that much of it is accessible from multiple locations, the evidence located in this District, and the presumption that the bulk of the evidence resides with the accused infringer, this factor weighs only slightly for transfer.

**ii. *The Availability of the Compulsory Process to Secure the Attendance of Witnesses***

This factor weighs in favor of transfer when more third-party witnesses reside within the transferee venue and when the transferee venue is said to have "absolute subpoena power" over these third-party witnesses. *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Additionally, courts give more weight to those specifically identified witnesses and afford less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No. 6:10-CV-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on

unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-CV-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

The amended Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business. FED. R. CIV. P. 45(a)(2), 45(b)(2), 45(c)(1)(A); *see* Committee Notes on Rules—2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance."). The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial without the involvement of a second district court. *See* FED. R. CIV. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds…that the witness is more than 100 miles from the place of hearing or trial ….").

In its opening brief, Apple states that it may need to subpoena unidentified employees of California companies Broadcom and Qualcomm. Docket No. 26 at 7. On this point, TracBeam's criticizes Apple for not identifying potentially relevant witnesses and not admitting that there are potential third-party witnesses in or near the Eastern District of Texas. Docket No. 853 at 8, 10. In its reply brief, Apple identifies at least 14 Broadcomm/Qualcomm "potential third party witnesses," as well as potential witnesses from third parties STMicroelectronics and InvenSense. Docket No. 42 at 7. Finally, Apple also identified two prior art witnesses living in California. Docket No. 26 at 7.

TracBeam faults Apple for replacing "a list of 0 vendor witnesses [in its initial brief] with 15 witnesses" in its reply brief. Docket No. 47 at 6. TracBeam also asks the Court to draw an adverse inference regarding the presence of relevant third-party witnesses because Apple was nonresponsive to certain discovery requests on these topics. Docket No. 36 at 10. TracBeam also claims Apple was overly-selective in "singling out" the two prior art witnesses in its motion. *Id*. at 8. Finally, TracBeam provides a list identifying 12 third-party witnesses subject to this Court's subpoena power. Docket No. 36 at 9–10. TracBeam therefore argues this factor weighs against transfer.

As described above, the disparity between the level of evidence Apple provides in its opening brief and its reply brief for this factor and the cost of attendance for willing witnesses factor (discussed below) is concerning. All this evidence was readily available to Apple prior to filing its initial motion (it is primarily the names of Apple's employees and suppliers). At the hearing, Apple stated it needed to first see TracBeam's response to know what evidence to put in its motion. 6:12-cv-680, Docket No. 54 at 10:15–13:6.

Respectfully, Apple has the process in reverse. In order to claim another venue is more convenient, a defendant should first investigate the contentions of the case and determine where its own documents, witnesses, and suppliers are located prior to filing the initial motion to transfer. That is the only way, in good faith, a party can file the motion in the first place. By placing such a large amount of evidence in the reply brief, Apple has shifted the relative burdens of the parties. TracBeam, despite being the non-movant, makes its most substantial arguments first and in response to a "thin" opening brief, while TracBeam is then limited to a sur-reply to address Apple's significantly more substantive reply brief.

Despite the unusual course of the briefing, each party has identified a number of potential (and in most cases duplicative) witnesses outside the absolute subpoena power of either district. It is still speculative whether any of these witnesses will be called to testify. Moreover, this Court has nationwide power to subpoena witnesses for deposition in the event a witness is called. While there is certainly benefit to providing live witnesses at trial, the Court cannot conclude at this point that an identified, non-duplicative, and relevant witness will be unavailable to provide live testimony. Further, neither party has shown that deposition testimony at trial would prejudice Apple or TracBeam. *See Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000). Accordingly, this factor is neutral.

**iii. *The Cost of Attendance of Willing Witnesses***

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. District courts should assess the relevance and materiality of the information the witness may provide, but there is no requirement that the movant demonstrate that the witness has anything more than relevant and material information. *In re Genentech, Inc.*, 566 at 1343–44.

The Fifth Circuit established a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–205; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home …."). The threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 217. If so, then a court compares the respective distances between the residences of all the identified material and relevant witnesses and the transferor and

transferee venues. *Id.* Transfer is favored if the transferee venue is a shorter average distance from witnesses as compared to the transferor venue. *See id.*

Apple argues that this factor favors transfer. Docket No. 26 at 7. Apple identifies a relevant marketing manager and a relevant software manager who work at or near Cupertino. *Id.* at 8, Docket 26-2 (Van Dyke Decl. ¶ 4). Apple argues that travel to this District for these managers (or members of their teams) would "impose significant costs on Apple and require Apple employees to spend considerably more time away from their regular employment than if this case were transferred." *Id.* at 9. In its reply brief, Apple identifies at least 20 Apple employees as willing witnesses relevant to the transfer analysis (many of which are subordinates of the identified market manager or software manager). Docket No. 42 at 2.

TracBeam faults Apple for not providing names of relevant witnesses in its Austin, New York, or North Carolina facilities, despite discovery requests for this information. Docket No. 47 at 8. TracBeam also identifies TracBeam's co-founders (Colorado and Florida) and a co-inventor (Alabama) as willing witnesses who find Eastern District of Texas more convenient than Northern District of California. Docket No. 36 at 11. TracBeam therefore argues that transferring the case to the Northern District of California increases convenience for Apple's witnesses at the expense of TracBeam's witnesses, and therefore this factor does not favor of transfer. *Id*.

Though Apple identifies a greater number of witnesses, many of them could only present duplicative testimony. Apple has identified its software and marketing manager of the accused products and has shown that that the Northern District of California is more convenient to those managers (or their team members). TracBeam has shown the Eastern District of Texas is more convenient for a co-founder (Florida) and co-inventor (Alabama); and TracBeam supplied a

declaration from TracBeam's other co-founder and co-inventor (Colorado) who finds the Eastern District of Texas more convenient. On balance, Apple has shown the Northern District of California is more convenient for its witnesses and TracBeam has shown the Eastern District of Texas is more convenient for its witnesses. Accordingly, this factor is neutral.

**iv. *Other Practical Problems***

Practical problems include those related to judicial economy. In particular, multiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Additionally, co-pending litigation before the court involving the same patent and underlying technology provides a substantial justification for maintaining the suit in the transferor venue. *Id.*

Apple contends that neither the co-pending T-Mobile/MetroPCS action involving the asserted patents or the Court's familiarity with the patents and underling technology "provide[s] a reason to tether this case to this District." Docket No. 26 at 12. Apple argues that there is not enough overlap between the instant case and the co-pending T-Mobile/MetroPCS action to justify keeping the cases together. Docket No. 42 at 8–9. Apple also argues that TracBeam's earlier lawsuits involved "only half the patents asserted here, and implicated different defendants, different accused products, and different smartphone operating systems." Docket No. 26 at 10. Apple further argues that this Court's familiarity with the prior litigation should be discounted because "the presiding judge in this action, who became familiar with two of the four asserted patents during TracBeam's prior litigation (i.e., the '231 and '484 patents, but not the '153 and '327 patents), is retiring in May 2015."[1] Docket No. 26 at 11.

[1] Judge Davis reassigned this case to the undersigned on January 14, 2015, before TracBeam filed its response.

TracBeam responds that this factor strongly weighs against transfer. Docket No. 36 at 14. TracBeam argues that because the transfer analysis is analyzed at the time of filing, "[i]t was reasonable for TracBeam to file this case in Judge Davis's court and to anticipate that during those nine months [prior to his retirement], Judge Davis might be asked by one or both parties to rule on motions that drew on his prior experience with the patents and relevant facts." Docket No. 36 at 12–13. TracBeam also lists the overlap between this case and the co-pending T-Mobile case:

> (1) the same four TracBeam patents are asserted against the Defendants for their use of multiple location technologies to locate mobile phones, (2) the same claim construction issues will have to be resolved, (3) the same invalidity arguments and prior art will be raised by the Defendants, (4) the same prosecution laches defense will be raised, and (5) the same prior license agreements will [be] addressed by the parties in their damages cases."

Docket No. 36 at 13–14. TracBeam argues that in light of these common issues, "[t]ransferring this case to California while the T-Mobile case remains in this District 'would therefore result in duplicative and repetitive efforts in multiple courts, increasing the burden of time, resources, and money on the judicial system and the parties.' " Docket No. 36 at 14, citing, *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010).

The asserted patents in this case are extremely complicated. Defendants in the consolidated case described them as "weighing in at just over 700 pages," with "enormous" file histories which "dragged on for more than a dozen years and encompass many thousands of pages," and contain "many independent and dependent claims running for more than a patent column." Cause No. 6:14cv678, Docket No. 56 at 6. The increase in judicial resources and burden on the parties in having two courts decide these issues is unusually high in this circumstance. Transferring this case results in two different courts dealing with *Markman*

disputes, summary judgment issues, and equitable defenses, requiring a large time commitment given the complexity of the patents.

Additionally, though the undersigned does not have the experience with these patents and accused products as Judge Davis did, the transfer factors are weighed at the time of filing. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Judge Davis was scheduled to retire nine months later when TracBeam filed this case, and it was reasonable for the parties to expect to receive the benefit of Judge Davis's past experience with the patents for those remaining nine months. The prior cases involved two of the asserted patents (which relate to similar technology). Both cases settled on the eve of trial, after a total of five pretrial conferences and numerous dispositive/*Daubert* motions. *See TracBeam, LLC v. AT&T Mobility, LLC,* Cause No. 6:11cv96, *TracBeam LLC v. Google, Inc.*, Cause No. 6:13cv93. Accordingly, this factor weighs against transfer.

### B. Public Interest Factors

#### *i. The Administrative Difficulties Flowing From Court Congestion*

Apple argues that this factor weighs in favor of transfer because "the impending retirements of Judges Davis and Schell will contribute to the state of flux and administrative challenge this Court faces in managing the nation's largest patent docket." Docket No. 26 at 12. TracBeam responds that transferring this case will delay the trial date. Docket No. 47 at 10. Each party presents statistics to show which district is faster to trial. Docket Nos. 42 at 9, 36 at 14. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *In re Genentech*, 566 F.3d at 1347. Based on the statistics cited by the parties, it is unclear whether this case would be delayed due to court congestion if it were transferred to the Northern District of California. Accordingly, this factor is neutral.

### ii. *The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I,* 371 F.3d at 206. Interests that could apply to any district in the United States -- for example, the sale of infringing products -- are disregarded in favor of particularized local interest. *In re Volkswagen II*, 545 F.3d at 218. Local interests may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *See Hoffman-La Roche*, 587 F.3d at 1336.

Apple argues that the "Northern District of California has a greater interest in resolving this patent dispute than does the Eastern District of Texas because the research and development of the accused products in the United States took place in or near Cupertino." TracBeam responds that "given Apple's lack of candor in identifying relevant Apple and third-party activities, witnesses, and evidence in locations other than Northern California (including Texas), the Court should find this factor is neutral." Docket No. 36 at 15.

Apple is headquartered in the Northern District of California, and while Apple has some ties to Texas, those ties are not necessarily specific to this district. The Court will not discount Apple's ties to the Northern District of California because of Apple's alleged lack of candor in discovery responses, but will consider the self-interested selectivity of Apple's discovery responses and submitted evidence when evaluating whether Apple has met its burden to establish that Northern District of California is clearly more convenient. Accordingly, this factor weighs in favor of transfer.

### iii. *The Remaining Public Interest Factors*

The parties maintain that the familiarity with the relevant law and avoiding unnecessary conflicts of law are neutral. Docket Nos. 26 at 13, 36 at 15.

## CONCLUSION

For the reasons stated above, Apple failed to establish that the Northern District of California is a clearly more convenient forum. Based on the evidence presented, local interest favors transfer and sources of proof slightly favor transfer. On these facts alone, the Court cannot say Apple has demonstrated that Northern District of California is clearly more convenient. However, when the factors are weighed against the considerations of judicial economy, the resulting balance confirms that Apple has not met its burden showing transfer is appropriate. Accordingly, the Court **DENIES** Apple's Motion to Transfer (Docket No. 26).

**So ORDERED and SIGNED this 29th day of September, 2015.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE